***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Kemper Insurance Group was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $279.20, and compensation rate at that time was $80.00.
5. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on April 4, 1975.
6. Defendants paid plaintiff three weeks of temporary total disability benefits, from April 24, 1975 to May 14, 1975, pursuant to the Form 21 agreement.
7. On May 10, 1977, Deputy Commissioner Richard B. Conely filed an Opinion and Award, which found plaintiff was entitled to temporary total disability compensation from April 17, 1975 to May 5, 1975 and from September 15, 1975 until January 4, 1977; was paid temporary total disability from April 17, 1975 until May 14, 1975 at the rate of $80.00 per week; and retained a twenty-five percent (25%) permanent partial disability to the back. Pursuant to the Opinion, defendants were ordered to pay temporary total disability from September 15, 1975 until January 4, 1977, less the eighteen days overpayment; plus 75 weeks of permanent partial disability beginning January 4, 1977. Plaintiff was represented by an attorney throughout this period and at the time of the hearing.
8. Plaintiff, through counsel, appealed the Opinion and Award. On August 15, 1977, the Full Commission amended the Deputy Commissioner's decision by striking paragraph 1 of the Award and instead awarded plaintiff temporary total disability compensation from September 15, 1975 until January 4, 1977, less a period of overpayment of temporary total disability of eighteen days for the period from April 17, 1975 to May 5, 1975.
9. On September 25, 1980, Deputy Commissioner W. C. Delbridge conducted a hearing in this claim, for change of condition at which new attorney Joe Brewer represented plaintiff. An Opinion and Award, filed on January 11, 1982, found plaintiff's permanent partial disability rating had increased to thirty percent (30%), and as a result of which, he was awarded an additional fifteen weeks of permanent disability under N.C. Gen. Stat. § 97-31(23).
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On April 4, 1975, plaintiff sustained an admittedly compensable back injury when he lifted a desk at work.
2. On August 20, 1977, plaintiff wrote to the Full Commission for clarification of Deputy Commissioner Conley's Opinion and Award filed May 10, 1977. Commissioner Coy M. Vance responded, by letter dated August 25, 1977, informing plaintiff that each party has thirty days from the date the Opinion and Award is received to file an appeal. Commissioner Vance suggested plaintiff contact his attorney if he disagreed with the decision.
3. On April 16, 1978, plaintiff wrote to the Executive Secretary, regarding medical bills. On May 10, 1978, Dockets Director Robert Bridges recommended plaintiff contact his attorney directly, as it was improper for the Commission to discuss this matter directly with an individual represented by counsel.
4. Plaintiff wrote the Commission again on February 19, 1979, regarding a "change of degree of my permanent disability." Plaintiff further claimed he was entitled to compensation for more than two years. He noted he had not employed a lawyer at this time. The Dockets Director wrote to plaintiff's counsel of record on March 2, 1979 regarding his representation.
5. By letter dated April 2, 1979, defense counsel James H. Kelly, Jr., wrote to inform plaintiff the defendant's position that any alleged right leg injury was not compensable. He stated that, as neither side had appealed the prior Opinion and Award, it had become final. Mr. Kelly copied plaintiff's counsel with the letter. Plaintiff responded to Mr. Kelly, by letter dated April 24, 1979, contending he had a change of condition, and the matter was not a final decision.
6. Commission Chairman William H. Stephenson wrote plaintiff on September 24, 1979, in response to a letter plaintiff had written to the Governor. Chairman Stephenson informed plaintiff that no appeal was taken from the decision filed and that plaintiff had been apprised of his rights by letter in April in 1978. He reiterated that plaintiff was represented by counsel. The Chairman closed his letter by instructing plaintiff that if he could show he had a change of condition since the prior Award, he could request a hearing by filing a Form 33.
7. Plaintiff filed a Form 33 Request for Hearing on September 26, 1979 to request a hearing for change of condition. He forwarded medical reports to defense counsel on March 1, 1980.
8. On April 16, 1980, plaintiff's first counsel informed defense counsel he had not been requested to provide any further representation.
9. On January 18, 1982, plaintiff's new counsel wrote to defense counsel, to inform him that plaintiff had not been reimbursed for medication and travel expenses.
10. Defendants last paid plaintiff indemnity compensation as a result of the admittedly compensable injury on January 28, 1982. Defendants filed an I.C. Form 28B Report of Compensation and Medical Paid on January 29, 1982.
11. On July 2, 1982, Chairman Stephenson wrote to plaintiff responding to his letter to the Governor. He enclosed a copy of the Form 28B and instructed plaintiff to submit any medical bills to the carrier.
12. On August 25, 1982, the carrier's claim supervisor V. J. Fernando wrote to plaintiff regarding a check for $891.00, which plaintiff had not received previously. A second check was issued, and in addition the carrier sent a record of drugs and mileage paid by the carrier.
13. On October 20, 1982, claim representative James A. Rudisill responded to plaintiff's September 25, 1982 letter, indicating medical and travel expenses paid by check in the amount of $709.02. Plaintiff was also instructed to provide receipts for meals or motel expenses, as the carrier could not reimburse expenses that were not properly documented.
14. On October 28, 1983, carrier's claims supervisor Mollie W. Murphy sent plaintiff a response to his October 19, 1983 letter. She wrote, "Please find enclosed two checks payable to you, which replaced the draft and check you returned. It appears that you have been reimbursed for all the expenses documented by receipts. No further consideration on your claim will be made without proper documentation."
15. Defendants reimbursed plaintiff for medical expenses on October 28, 1983. The carrier did not pay plaintiff any additional temporary total or permanent partial disability compensation.
16. On October 15, 1984, plaintiff wrote again to the Commission to request to reopen his claim for change of condition.
17. On October 26, 1984, Chairman Stephenson wrote to plaintiff, regarding the request to reopen the claim. He again attached a copy of the Form 28B, asking plaintiff if he had received other compensation payments since January 28, 1982, and indicated that if he had not, then his request for reopening appeared not to be timely filed.
18. Chairman Stephenson again wrote to plaintiff on December 14, 1984, with another copy of the Form 28B. He instructed plaintiff that, "If you did not receive any compensation payments after January 28, 1982, we do not see how it would be possible to reopen your case under the provisions of G.S. 97-47." The letter concludes, "I know of no way your case can be reopened more than two years after the last payment of compensation. According to your letter of December 3, you state that under the law, your case can be reopened. Please tell us how."
19. On February 5, 1985, Chairman Stephenson wrote to plaintiff to inform him the carrier contends his claim is barred under N.C. Gen. Stat. § 97-47, which gave him two years from the date of last payment within which to request a reopening. He noted, "If you contend that you can show that this provision of the statute is not applicable to you, you may request a hearing on the forms which we are attaching hereto."
20. Plaintiff wrote to the Commission on December 1, 1997. Thereafter, Commission Ombudsman Lee Capasso responded to plaintiff on February 24, 1998, writing to inform him that, "Pursuant to Hyler v. GTE Products Co., injuries found to be compensable after July 1, 1973 and prior to July 5, 1994 are entitled to unlimited rights to medical compensation. You should contact your former employer's workers' compensation carrier, Lumbermens Mutual Casualty Company, if you are interested in seeking additional medical compensation."
21. On October 5, 1998, carrier's claim supervisor Cynthia Chitwood wrote to Ms. Capasso to inform her plaintiff had submitted numerous bills. However, the payment of the bills was denied due to his failure to submit the proper forms and due to the fact they were unrelated to the compensable injury. Ms. Chitwood requested a copy of the Commission's file, as the carrier no longer had a paper file due to the many years of inactivity in the file.
22. Ms. Capasso informed Ms. Chitwood, by letter dated November 20, 1998 that the Commission could not locate plaintiff's file and the file would have to be reconstructed.
23. On April 12, 1999, Ms. Capasso wrote to plaintiff after obtaining copies of the medical and dental bills, which he had submitted to the carrier. She also questioned whether plaintiff had signed a final payment with defendants, as the amount of the award was suggestive of the same.
24. Plaintiff emailed Ms. Capasso on May 31, 1999, apologizing for inadvertently submitting bills for treatment unrelated to the compensable back injury. He indicated he had developed a skin disorder while taking medication for the back injury, and had his heart attack due to withdrawal from these medications. He further stated that due to his illness and that of his wife, some of the bills had been improperly submitted.
25. On January 8, 2001, plaintiff filed another I.C. Form 33 Request for Hearing, seeking to have his claim reopened.
26. Defendants filed an I.C. Form 33R Response to Request for Hearing on May 16, 2001, which indicated plaintiff's claim for additional benefits was barred due to failure to timely file to reopen the claim.
27. On June 4, 2001, plaintiff wrote to Deputy Commissioner George T. Glenn, II, to request a his claim be removed from the June 29, 2001 hearing docket due to his recent heart surgery. By Order filed on June 18, 2001, Deputy Commissioner Glenn removed this case from the active hearing docket.
28. On June 21, 2002, defense counsel filed a Motion to Dismiss plaintiff's claim, pursuant to Commission Rule 613, for failure to prosecute his claim. In the Motion, counsel referenced Deputy Commissioner Glenn's June 18, 2001 Order of Removal of the claim from the docket, and plaintiff's failure to pursue the claim within one year from the date of the filing of the Order.
29. Plaintiff emailed defense counsel on July 6, 2002, regarding his reasons for not proceeding with his prior claim.
30. On August 30, 2002, plaintiff emailed defense counsel, stating he had not contacted the Commission to prosecute his claim due to other health problems of him and his wife.
31. On December 19, 2002, defense counsel wrote to Executive Secretary Tracey Weaver in follow-up to the Motion to Dismiss plaintiff's claim, which was filed in June of 2002.
32. Plaintiff wrote to Deputy Commissioner Glenn on January 9, 2003, regarding the reasons for removal of the case and his delay in seeking to pursue the claim.
33. By Order filed on January 8, 2003, Executive Secretary Weaver dismissed plaintiff's claim without prejudice and informed him he could reinstate his claim by filing within one year of the date of the filing of the Order.
34. On March 1, 2004, ombudsman E. Deneen Barrier sent plaintiff a response, with a partial copy of his file. However, there is no record of the nature of his inquiry.
35. On March 18, 2004, plaintiff filed an I.C. Form 33 Request for Hearing, seeking to reopen his claim. Enclosed with the Form 33 was a copy of the carrier's October 28, 1983 letter and plaintiff's October 15, 1984 letter to the Commission.
36. As plaintiff's compensable injury occurred after July 1, 1973 and prior to July 5, 1994, he is entitled to have defendants pay for causally related medical benefits for his lifetime.
37. Plaintiff's Form 33 was not filed within two years from January 28, 1982, the date he received his last compensation check.
38. There is no evidence in the record that defendants induced plaintiff to delay filing his claim for additional compensation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. A validly executed Industrial Commission Form 21 Agreement constitutes an "award" under the North Carolina Workers' Compensation Act. Apple v. Guilford County, 84 N.C. App. 679, 353 S.E.2d 641, rev'don other grounds, 321 N.C. 98, 361 S.E.2d 588 (1987).
2. A closing receipt purports to be a final settlement and indicates that no further compensation will be paid unless a request for hearing for a change of condition is timely made. Watkins v. Central Motor Lines,279 N.C. 132, 181 S.E.2d 588 (1971). After the filing of the Form 28B on January 29, 1982, defendants did not pay plaintiff any additional compensation. Plaintiff did receive reimbursement for medical and travel expenses, however, this is not considered compensation under the Act. Plaintiff's failure to file a claim for additional compensation with the Industrial Commission within the two-year period prescribed by N.C. Gen. Stat. § 97-47 bars him from receiving additional compensation under the Act. Defendants are not estopped to rely on N.C. Gen. Stat. § 97-47 to bar plaintiff's claim.
3. "Compensation" refers to indemnity compensation, not the payment of medical expenses. N.C. Gen. Stat. § 97-25. Hyler v. GTE Products Co.,333 N.C. 258, 425 S.E.2d 698 (1993).
4. Plaintiff is entitled to have defendants pay for causally related medical treatment which may be necessary to provide relief, effect a cure or lessen his disability. N.C. Gen. Stat. §§ 97-2(19); 97-25. Hyler v. GTEProducts Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for additional indemnity benefits is, and under the law, DENIED.
2. Defendants shall pay for causally related medical treatment which may be necessary to provide relief, effect a cure or lessen his disability.
3. Each side shall pay its own costs.
This the 27th day of January 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/mb